IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CUNINA AGARD,

        Plaintiff,                    No. CIV 2-10-cv-0323-GEB-JFM (PS)

    vs.

BRETT JUSTIN HILL, JENNILEE HILL, and DOES 1 to 10,

        Defendants.               FINDINGS & RECOMMENDATIONS

                              /

        Defendants' June 2, 2010 motion for summary judgment came on for hearing July 1, 2010. Cunina Agard appeared in pro per. Lawrence Hensley appeared for defendants. Upon review of the motion and the documents in support and opposition, and good cause appearing therefor, THE COURT MAKES THE FOLLOWING FINDINGS:

UNDISPUTED FACTS

        Plaintiff is a wedding planner residing in Sacramento, CA. (First Amended Complaint ("FAC") at 2.) Plaintiff was hired by Brett Justin Hill and Jennilee Hill ("the Hills" or defendants) as a wedding coordinator, but fired prior to the defendants' May 2008 wedding. (See FAC at 4-5.)

/////

1

On February 6, 2009, judgment was entered for defendants in Sacramento Small Claims Court and, on April 29, 2009, that judgment was affirmed following trial de novo in the Superior Court of California, County of Sacramento Small Claims Division (Hensley Decl., Exs. A and B.) In that suit, the Hills sued plaintiff for reimbursement in the amount of $4,000.00 following their termination of her services. (Id., Ex. B.) The court ordered "[Agard] to reimburse [the Hills] $4,000.00 due to some work performed per wedding contract. However, the contract was not satisfactorily performed which caused plaintiffs to hire other individuals to assist with completion of their plans." (Id.)

On or about November 23, 2009, defendants published on multiple website forums the following statements:

Wedding Coordinator Warning

Congrats to all you future brides!

My husband and I were married in May 2008 at the Harvest Inn in St. Helena Ca. We originally hired Cunina Agard of Nina's Lovely I Do's (originally out of Sacramento) to be our wedding coordinator, but had to fire her a couple of months before the wedding due to issues that are too numerous and frustrating to go into at the moment (thought [*sic*] I would be more than happy to explain if you want to email me). Though Ms. Agard promised to return a portion of her fee to us, she did not do so and we were forced to sue. We won the case, but Ms. Agard appealed. We won the appeal as well. Still, she did not fulfill the court order to refund our money. Ms. Agard moved multiple times during the whole process and while trying to find her to serve yet another court order, we discovered that she is operating under a new name and location in Napa Ca. I am writing this post to warn anyone who is considering using Cunina Agard from (the now named) Nina's I Do's. You will not get what you paid for and your association with the company will cause way more stress, tears, and sleepless nights than any bride should have to deal with. We found out too late that we were not the first couple to have to sue Ms. Agard. I hope that nobody else has to go through what we did. Please feel free to shoot me a message with any questions.

(FAC at 2-3.)

PROCEDURAL BACKGROUND

On January 4, 2010, plaintiff filed a complaint in the Superior Court of the County of Sacramento against defendants listed herein for libel and tortious interference with contract or

2

prospective economic advantage. (See Doc. No. 1.) Plaintiff sought general and special damages according to proof, punitive damages, and costs of suit. (Id. at 14.) The action was removed to this court on February 5, 2010 with jurisdiction based on diversity (defendants are residents of Reno, Nevada).

On February 18, 2010, plaintiff filed a first amended complaint ("FAC"). In the FAC, plaintiff contends the website posting by the Hills contains three false statements that portray her as an untrustworthy and incompetent wedding planner. First, plaintiff claims the statement "Ms. Agard moved multiple times" is false in that she only moved once "down the street" to a listed address and that she left a mail forward. (FAC at 4.) Plaintiff also asserts she maintained the same telephone number. (Id.) Plaintiff argues the statement implies that she attempted to avoid service in a lawsuit or that she was otherwise engaged in unfair or illegal business practices. (Id.)

Second, plaintiff claims the following statement is false: "We discovered that she is operating under a new name and location in Napa Ca. I am writing this post to warn anyone who is considering using Cunina Agard from (the now named) Nina's I Do's." (FAC at 4.) Plaintiff claims she did not change the name of her business or the location from which she conducts her business. (Id.) Plaintiff argues the statement is designed to be understood by the reader that she changed business names or business areas for purposes of unfair trade or as a way to avoid a lawsuit or other harm to her reputation. (Id.)

Third, plaintiff claims the Hills' statement that they had to fire plaintiff "a couple of months before the wedding due to issues that are too numerous and frustrating to go into at this moment" is false. (FAC at 4.) Plaintiff asserts she took no action to justify the firing; that she was fired approximately one month prior to the wedding (not a couple of months); that the Hills used the vendors and arrangements plaintiff secured for their wedding; and, lastly, that the firing was due to a difference of personality rather than any professional failing of the plaintiff. (Id. at 4-5.) Plaintiff argues the statement implies that she was fired due to failure to properly plan the

3

defendants' wedding.  (Id. at 5.)

Plaintiff also claims that she had a contractual business relationship with multiple vendors, of which defendants were aware.  Plaintiff contends defendants approached these vendors to malign plaintiff's reputation and trustworthiness and to threaten to damage the reputation of any business that worked with the plaintiff.  Plaintiff argues that as a result of defendants' statements to each of the vendors listed in the complaint, the vendors have subsequently refused to continue to have any business dealings with plaintiff.

On February 12, 2010, defendants filed a motion to dismiss that was heard before the undersigned on April 8, 2010.  On April 9, 2010, the undersigned recommended that the motion be denied as to plaintiff's libel claim on the first two statements that plaintiff challenges as false and granted on the third statement that plaintiff challenges as false.  It was also recommended that defendants' motion be denied as to plaintiff's intentional interference claim.  On May 14, 2010, the Honorable Garland E. Burrell adopted the findings and recommendations in full.

On June 2, 2010, defendants filed a motion for summary judgment.  On June 10, 2010, plaintiff filed an opposition, On June 18, 2010, defendants filed a reply and their evidentiary objections and a motion to strike.  On June 23, 2010, plaintiff filed her evidentiary objections and a motion to strike. On June 24, 2010, plaintiff filed a response.

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

4

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party

need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## ANALYSIS

I.   Defamation

In the FAC, plaintiff challenges the following statement as defamatory: "Ms. Agard moved multiple times." Defendants move for summary judgment on the ground that their statement is true and thus not actionable.

In their motion, defendants argue that plaintiff did move multiple times. In support, they submit the following: (1) plaintiff's February 22, 2010 opposition to defendants' February 12, 2010 motion to dismiss, which lists plaintiff's address as 3856 38th Street,

Sacramento, CA (see Doc. No. 13); (2) the July 6, 2007 "Wedding Agreement" between Nina's Lovely I Do's and defendants, provided by plaintiff in her opposition to defendants' motion to dismiss, which lists 2035 W. El Camino Avenue, #189, Sacramento, CA 94833 as the address for Nina's Lovely I Do's (Hensley Decl., Ex. E); (3) a payment reminder dated September 9, 2007 from Nina's Lovely I Do's, provided by plaintiff in her opposition to defendants' motion to dismiss, which lists the business address as 3445 37th Street, Sacramento, CA 95817 (Id., Ex. F); and (4) defense counsel's declaration that an internet search for Nina's Lovely I Do's reveals two separate addresses for the business: 2391 Arden Way, Suite 1, Sacramento, CA and 4200 Silverado Trail, Napa, CA (Hensley Decl., ¶¶ 4-5; Exs. G-H).

Plaintiff counters that, reading the defendants' statement in context, the relevant time period here is during the pendency of the state court action and that, during that period, she moved only once. In their online posting, defendants stated: "Though Ms. Agard promised to return a portion of her fee to us, she did not do so and we were forced to sue. We won the case, but Ms. Agard appealed. We won the appeal as well. Still, she did not fulfill the court order to refund our money. Ms. Agard moved multiple times *during the whole process* and while trying to find her to serve yet another court order, we discovered that she is operating under a new name and location in Napa Ca." (FAC at 2-3 (italics added).) Plaintiff asserts the relevant time period, then, necessarily began following the defendants' wedding on or around May 2008 and ended on or around November 2009 when the challenged statements were posted online.

During this time period, plaintiff argues that her business address remained unchanged at 2391 Arden Way, Suite 1, Sacramento, CA 95825. She also argues that during this time period, she changed her home address only once from 3445 37th Street, Sacramento, CA 95817 to 3856 38th Street, Sacramento, CA 95820. In support and to rebut the evidence offered by defendants, plaintiff submits that on September 11, 2006, prior to her business relationship with the defendants, she moved to an apartment complex at 2035 W. El Camino Avenue #189, Sacramento, CA 95833 where she maintained a home office. (Opp'n at 6; Ex. L.) On July 6,

7

1  2007, plaintiff entered into a wedding contract with defendants, which listed 2035 W. El Camino
2  Avenue #189, Sacramento, CA 95833 as the business address. (<u>See</u> Hensley Decl., Ex. E.)
3        On September 1, 2007, plaintiff moved her residence to 3445 37th Street,
4  Sacramento, CA 95817 and informed defendants on September 9, 2007 of the change of address
5  (<u>see</u> Hensley Decl., Ex. F). On February 1, 2008, plaintiff opened a business office at 2391
6  Arden Way, Suite 1, Sacramento, CA 95825. (Opp'n, Ex. M; Hensley Decl., Ex. G.) Plaintiff
7  submits an email exchange dated March 18, 2008 between her and Ms. Hill in which this address
8  was listed as the "Main Office" address for Nina's Lovely 'I Do's.' (Opp'n, Ex. O.)
9        Following the termination of her relationship with the Hills on or about April
10  2008, plaintiff maintains that she moved once from 3445 37th Street, Sacramento, CA 95817 to
11  3856 38th Street, Sacramento, CA 95820. She provides what appears to be a photocopy of a
12  document in which she requested that the United States Postal Service forward her mail from this
13  first address to this second address beginning on February 17, 2009. (<u>See</u> Opp'n, Ex. P.) Plaintiff
14  further challenges the Napa, CA address located by defense counsel following an Internet search.
15  Plaintiff asserts that the address was posted on a website called "The Gathering Guide" and
16  submits a computer printout that shows that her contract with that company expired on March 21,
17  2007, prior to the commencement of her business relationship with the Hills. (<u>See</u> Opp'n, Ex. N;
18  Hensley Decl., Ex. H.)
19        In their reply, defendants assert that because plaintiff has not denied moving to the
20  five listed addresses, the statement that "Ms. Agard moved multiple times" is true. Even if the
21  statement was false, defendants maintain that plaintiff should be estopped from denying that she
22  moved to these addresses because she informed defendants that these were her addresses at
23  various times.
24        The tort of defamation involves (1) a publication that is (2) false, (3) defamatory,
25  (4) unprivileged, and that (5) has a natural tendency to injure or that causes special damage. <u>Taus</u>
26  <u>v. Loftus</u>, 40 Cal.4th 683, 804 (Cal. 2007). In all cases of alleged defamation, whether libel or

slander, the truth of the offensive statements or communication is a complete defense against civil liability, regardless of bad faith or malicious purpose. Smith v. Maldonado, 72 Cal. App. 4th 637, 646 (Cal. Ct. App. 1999). The burden of pleading and proving truth is on the defendants in this matter. See id. at 647 n.5.

While it is true that plaintiff moved her home and business addresses more than once, the relevant time period remains at issue. Defendants rely on a period of time both before, during and after their business relationship with plaintiff in arguing that plaintiff moved multiple times. Plaintiff, on the other hand, relies on a period of time surrounding the state court action to argue that she did not move her business address at all and only moved her home address once. Based on the evidence before the court, there appears to be a genuine issue of material fact as to when plaintiff is alleged to have moved "multiple times." See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Accordingly, defendants are not entitled to summary judgment on plaintiff's defamation claim.

## II.     Tortious Interference with Contract or Prospective Economic Advantage

Plaintiff also claims defendants interfered with her contractual business relationships with multiple vendors. Defendants seeks summary judgment on this claim based on their declarations that they did not improperly approach these vendors, did not disparage plaintiff, and did not threaten the vendors to cease their business relationships with the plaintiff.

In the FAC, plaintiff claims that she had a business relationship with All Seasons All Reasons Catering, Always and Forever DJ Services, A Spotlight Wedding, Ambiance Floral, and Harvest Inn; that the defendants were aware of plaintiff's relationships with these vendors; and that the defendants "approached each of these vendors, indicating that the plaintiff was not qualified as a wedding planner, and was not trustworthy, and threatened to damage the reputation of any business that worked with the plaintiff." (FAC at 8.) Plaintiff further claims that as a result of defendants' statements, each of the vendors listed have refused to continue any business

dealings with plaintiff, causing a current loss of $40,000 and a future lost value of $120,000.

/////

To succeed on a claim of intentional interference with prospective business advantage, the plaintiff must prove: "'(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.'" Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134, 1153 (Cal. 2003). The plaintiff must also "plead and prove as part of its case-in-chief that the defendant's conduct was 'wrongful by some legal measure other than the fact of interference itself.'" Id. (citing Della Payne v. Toyota Motor Sales, U.S.A., Inc., 11 Cal.4th 376, 393 (Cal. 1995)). It is not necessary to prove that the defendant acted with the specific intent, or purpose, of disrupting the plaintiff's prospective economic advantage. Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134, 1155-57 (Cal. 2003). Instead, "it is sufficient for the plaintiff to plead that the defendant '[knew] that the interference is certain or substantially certain to occur as a result of his action.'" Id. at 1156-57.

In their motion for summary judgment, defendants assert that they never contacted the listed vendors for any reason other than in relation to the execution of their wedding and/or the filing of the underlying state court action. Defendant Jennilee Hill declares that she contracted with All Seasons All Reasons Fine Catering for her wedding. (J. Hill Decl., ¶ 8.) Ms. Hill communicated with Monty Montgomery, the owner of the company, for wedding planning purposes. (Id.) Defendants submit a letter from Mr. Montgomery in support of their motion.[1] (J. Hill Decl., Ex. D.) In that letter, Mr. Montgomery claims he has never been approached by a

---

[1] The defendants submit multiple letters in support of their motion for summary judgment. None of these letters are authenticated and, thus, are inadmissible. See Harris v. City of Seattle, 152 Fed. Appx. 565, 570-71 (9th Cir. 2005).

client with a request or threat not to work with any other vendor. (Id.) He also claims that he was
/////
made aware that the Hills were not using plaintiff's services and that, for "professional reasons,"
he would not work with plaintiff in the future. (Id.)

Always & Forever DJ was contracted to provide music for the Hills' wedding. (J. Hill Decl., ¶ 7.) Ms. Hill declares she never said anything defamatory about plaintiff to anyone in this company. (Id.) Anthony Martin, the owner of Always & Forever DJ, also wrote a letter in which he states that although he was made aware of the problems between plaintiff and the Hills, he has conducted business with plaintiff after the Hills' wedding. (J. Hill Decl., Ex. C.)

Ms. Hill further declares that she contacted Veronika Leoni from A Spotlight Wedding, a floral company, regarding services that were to be provided for Ms. Hill's wedding and was informed that the company was unaware that they were contracted to provide any services for the Hills. (J. Hill Decl., ¶ 4.) Ms. Hill contacted Ms. Leoni again after filing the state court action and was again informed that the company did not know who Ms. Hill was or that they were contracted to provide services for the Hills' wedding. (Id.) Defendants have not submitted a letter from Ms. Leoni.

Ambience Floral was contracted by the Hills to provide floral services for the wedding. (J. Hill Decl., ¶ 6.) Ms. Hill claims she never discussed plaintiff or plaintiff's services with Ambience Floral. (Id.) Defendants submit a letter written by Katie Edwards, the owner of Ambience Floral, in support. (See J. Hill Decl., Ex. B.) Ms. Edwards states that she does not have and never had a contractual business relationship with plaintiff. (Id.) She further states that she has never worked with plaintiff. (Id.)

Finally, Ms. Hill claims she communicated multiple times with employees of the Harvest Inn, the venue for the wedding, including Kelly Pettet, her primary contact at Harvest Inn. (J. Hill Decl., ¶ 5.) Ms. Hill states that she did not have any contact with Harvest Inn or Ms. Pettet except in preparation for her wedding and concerning the state court action against

1  plaintiff.  (Id.)  Defendants submit a letter by Ms. Pettet, which was written in support of the Hills
2  in the
3  /////
4  underlying state court action and which delineates Ms. Pettet's dissatisfaction with plaintiff's
5  professionalism.  (J. Hill Decl., Ex. A.)

      Both defendants declare they never made any disparaging remarks or threats to any of these vendors, and never suggested that these vendors not work with plaintiff again.  (See J. Hill Decl., ¶¶ 4-8; B. Hill Decl., ¶ 3.)

      In her opposition, plaintiff counters that the five listed vendors were merely "an example" of her relationships with vendors that were interfered with by the defendants' actions.  (Opp'n at 2.)  Plaintiff submits a letter written by Veronika Leoni of A Spotlight Wedding, one of tho listed vendors, who states that during the pendency of the underlying state court action, she was contacted by Ms. Hill to write a letter in support of the Hills' claim against plaintiff.  (Agard Decl., Ex. E.)  When Ms. Leoni refused, Ms. Hill allegedly said "well if you continue to work with Cunina you will be sorry."  (Id.)  Plaintiff further argues that the defendants have contacted other vendors, though she does not identify any by name.  In light of the fact that Ms. Leoni's letter is not a signed affidavit, plaintiff has not submitted any admissible evidence in opposition to the defendants' motion.

      The court also finds that plaintiff did not have a "contractual business relationship" with multiple vendors.  In her opposition, plaintiff implies that her contracts with the enumerated vendors in the FAC, and presumably others, were verbal and not written.  (Id.)  Plaintiff has not provided any evidence to support her contention that she had any contract with any vendor, verbal or otherwise, to support a cause of action for intentional interference with contract.

      As to plaintiff's claim of intentional interference with prospective economic advantage, plaintiff argues in the FAC that the defendants' "actions were intended to cause the vendors listed, as well as others, to cease having business relations with the plaintiff, and were

12

designed to drive the plaintiff out of business." The gravamen of plaintiff's claim in the FAC is the defendants' specific acts toward specific vendors. Plaintiff asserts that the defendants "approached each of these vendors," made "statements to each of the [enumerated] vendors," "indicat[ed] that plaintiff was not qualified," and "threatened to damage the reputation of any business that worked with the plaintiff." (FAC at 8.) As a result of these specific acts, plaintiff claims that "each of the [enumerated] vendors . . . have subsequently refused to continue to have any business dealings with the plaintiff." (Id.)

In her response to the defendants' reply, plaintiff clarifies that the Hills' emails and telephone calls to the enumerated vendors requesting letters in support of the underlying state court action was tortious interference. (See Resp. at 6-8.) While the Hills declare that they contacted the vendors for reasons related to the execution of their wedding and/or the filing of the underlying state court action, plaintiff relies only upon a letter from Ms. Leoni of A Spotlight Wedding to speculate that the Hills threatened the other vendors. To prove her case in chief, plaintiff must show that the defendants' conduct was "wrongful by some legal measure other than the fact of interference itself." See Della Payne v. Toyota Motor Sales, U.S.A., Inc., 11 Cal.4th 376, 393 (Cal. 1995). Plaintiff provides no support for the proposition that the mere act of contacting vendors for letters in support is wrongful by any legal measure. To the extent plaintiff refers to Ms. Leoni's letter for the argument that Ms. Hill's statement "you will be sorry" can be construed as a threat, summary judgment is appropriate because Ms. Leoni's letter is not admissible evidence. Even assuming, however, that Ms. Leoni's letter is admissible and that she did construe this statement as a threat instead of a warning, plaintiff has not shown that there was an "actual disruption of the relationship" between her and Ms. Leoni. See Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134, 1153 (Cal. 2003). To the contrary, Ms. Leoni states that she finds plaintiff to be "a very sweet, honest and professional person," and there is no evidence that Ms. Leoni has refused to work with plaintiff. Plaintiff has also not shown that the Hills made any similar statements to the other enumerated vendors.

Lastly, the court finds that plaintiff's theory of liability changes in her response to the defendants' reply.  Whereas plaintiff's allegations in the FAC concerned the defendants' specific acts towards specific vendors, in subsequent pleadings plaintiff shifts the focus to the defendants' online postings which, plaintiff contends, were "directed to ALL vendors in the Sonoma/Napa area."  (Opp'n at 3.)  Plaintiff maintains that the defendants' online postings are a form of communication with vendors and potential clients and construes the language in the postings as threats, including "I want to warn you to NOT work with Cunina Agard" and "Don't hire her.  You will regrett [*sic*] it."  The court finds that plaintiff's new theory that the defendants' postings have affected her relationships with "hundreds" of vendors and all possible clients in the Sonoma and Napa regions is not the theory posited in the FAC and cannot be reconciled with the allegations in the FAC.

Even if the court were to allow amendment of the FAC under Federal Rule of Civil Procedure 15(a), see <u>In re Stratosphere Corp. Sec. Litig.</u>, 66 F. Supp. 2d 1182, 1201 (D. Nev. 1999) ("When new issues or evidence supporting a legal theory outside the scope of the complaint is introduced in opposition to summary judgment, a district court should construe the matter as a request to amend pleadings . . . ."), the court finds that the defamation claim properly encompasses these allegations.

As such, defendants are entitled to summary judgment on this claim.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' June 2, 2010 motion for summary judgment be:

1. Denied as to plaintiff's libel claim; and

2. Granted as to plaintiff's intentional inference claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The

/////

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 2, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

/014.agar0323.msj