1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CUNINA AGARD,

11              Plaintiff,                    No. CIV 2:10-cv-0323-JFM (PS)

12        vs.

13   BRETT JUSTIN HILL, JENNILEE
     HILL, and DOES 1 to 10,
14
                Defendants.                   ORDER
15   _____/

16              Plaintiff's August 23, 2010 motion for summary judgment came on for hearing

17   October 7, 2010.  Cunina Agard appeared in pro per.  Lawrence Hensley appeared for

18   defendants.  Upon review of the motion and the documents in support and opposition, and good

19   cause appearing therefor, THE COURT MAKES THE FOLLOWING FINDINGS:

20                              UNDISPUTED FACTS

21              Plaintiff is a wedding planner residing in Sacramento, CA.  First Amended

22   Complaint ("FAC") at 2.  Plaintiff was hired by Brett Justin Hill and Jennilee Hill ("the Hills" or

23   "defendants") as a wedding coordinator, but fired prior to the defendants' May 2008 wedding.

24   (See FAC at 4-5.)

25              On or about November 23, 2009, defendants allegedly published on multiple

26   website forums the following statements:

1

1          Wedding Coordinator Warning

2          Congrats to all you future brides!

3          My husband and I were married in May 2008 at the Harvest Inn in St. Helena Ca.  We originally hired Cunina Agard of Nina's Lovely I Do's (originally out of Sacramento) to be our wedding coordinator, but had to fire her a couple of months before the wedding due to issues that are too numerous and frustrating to go into at the moment (thought [*sic*] I would be more than happy to explain if you want to email me).  Though Ms. Agard promised to return a portion of her fee to us, she did not do so and we were forced to sue.  We won the case, but Ms. Agard appealed.  We won the appeal as well.  Still, she did not fulfill the court order to refund our money.  Ms. Agard moved multiple times during the whole process and while trying to find her to serve yet another court order, we discovered that she is operating under a new name and location in Napa Ca.  I am writing this post to warn anyone who is considering using Cunina Agard from (the now named) Nina's I Do's.  You will not get what you paid for and your association with the company will cause way more stress, tears, and sleepless nights than any bride should have to deal with.  We found out too late that we were not the first couple to have to sue Ms. Agard.  I hope that nobody else has to go through what we did.  Please feel free to shoot me a message with any questions."

(FAC at 2-3.)

          Plaintiff contends the website posting by the Hills contains two false statements that portray her as an untrustworthy wedding planner.  First, plaintiff claims the statement "Ms. Agard moved multiple times" is false in that she only moved once "down the street" to a listed address and that she left a mail forward.  (FAC at 4.)  Plaintiff also asserts she maintained the same telephone number.  (Id.)  Plaintiff argues the statement implies that she attempted to avoid service in a lawsuit or that she was otherwise engaged in unfair or illegal business practices.

(Id.)          Second, plaintiff claims the following statement is false: "We discovered that she is operating under a new name and location in Napa Ca.  I am writing this post to warn anyone who is considering using Cunina Agard from (the now named) Nina's I Do's."  (FAC at 4.)  Plaintiff claims she did not change the name of her business or the location from which she conducts her business.  (Id.)  Plaintiff argues the statement is designed to be understood by the reader that she changed business names or business areas for purposes of unfair trade or as a way to avoid a lawsuit or other harm to her reputation.  (Id.)

1        PROCEDURAL BACKGROUND

2        On January 4, 2010, plaintiff filed a complaint in the Superior Court of the

3  County of Sacramento against defendants listed herein for libel and tortious interference with

4  contract or prospective economic advantage.  (See Doc. No. 1.)  Plaintiff sought general and

5  special damages according to proof, punitive damages, and costs of suit.  (Id. at 14.)  The action

6  was removed to this court on February 5, 2010 with jurisdiction based on diversity (defendants

7  are residents of Reno, Nevada).

8        On February 12, 2010, defendants filed a motion to dismiss.  On February 18,

9  2010, plaintiff filed a FAC.  The FAC is identical in all respects to the original complaint except

10  as to the issue of damages: in the FAC, plaintiff identifies with particularity the amount she

11  seeks in damages (general damages up to $300,000; special damages up to $425,000; punitive

12  damages to be determined by the court; and costs of suit).  On February 22, 2010, plaintiff filed

13  an opposition to the Hills' motion to dismiss.

14        The court has previously heard defendants' motion to dismiss and motion for

15  summary judgment.  The sole remaining claim is plaintiff's defamation cause of action.  On

16  August 23, 2010, plaintiff filed a motion for summary judgment.  Also on August 23, 2010,

17  plaintiff filed a motion in limine.  On September 2, 2010, defendants filed an opposition.  On

18  September 7, 2010, plaintiff filed a response.  On September 13, 2010, plaintiff filed a request

19  for judicial notice.

20        SUMMARY JUDGMENT STANDARDS UNDER RULE 56

21        Summary judgment is appropriate when it is demonstrated that there exists "no

22  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

23  matter of law."  Fed. R. Civ. P. 56(c).

24        Under summary judgment practice, the moving party

25        always bears the initial responsibility of informing the district court of the basis
        for its motion, and identifying those portions of "the pleadings, depositions,
26        answers to interrogatories, and admissions on file, together with the affidavits, if

any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

DISCUSSION

Plaintiff seeks summary judgment on her sole, remaining cause of action for libel.[1]  Plaintiff challenges the following two statements as defamatory: "Ms. Agard moved multiple times" and "We discovered that she is operating under a new name and location in Napa

---

[1] Plaintiff seemingly also seeks summary judgment on a claim of tortious interference with prospective economic advantage.  Plaintiff is advised that this claim was dismissed upon consideration of defendants' June 2, 2010 motion for summary judgment.

Ca."[2]  Plaintiff claims that the statements published on multiple websites by defendants were seen and read by persons in the Northern California region and that, as a proximate result of the defendants' actions, she suffered loss of reputation, shame, mortification, and hurt feelings. Further, plaintiff claims she lost the ability to operate as a wedding planner in her county and the surrounding counties.

1.    Liability

The tort of defamation involves (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and that (5) has a natural tendency to injure or that causes special damage. Taus v. Loftus, 40 Cal.4th 683, 804 (Cal. 2007).

Under California Civil Code § 45a, plaintiff may only prevail on a libel claim if the publication is (1) libelous on its face, or (2) if special damages have been proven.  A publication is libelous on its face only if there is no need to have explanatory matter introduced. See Cal. Civ. Code § 45a.  The determination as to whether a publication is libelous on its face is one of law, and must be measured by "the effect the publication would have on the mind of the average reader."  Newcombe v. Adolf Coors Co., 157 F.3d 686, 695 (9th Cir. 1998).

As a preliminary matter, it appears the parties are confused as to the type of libel that is at issue in this case.  Where a statement is defamatory on its face, it is said to be libelous per se, and actionable without proof of special damage.  5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 541, p. 794.  But if it is defamation per quod, i.e., if the defamatory character is not apparent on its face and requires an explanation of the surrounding circumstances (the "innuendo") to make its meaning clear, it is not libelous per se, and is not actionable without pleading and proof of special damages.  Id.

/////

---

[2]  In her motion for summary judgment, plaintiff now asserts that she is also challenging the statement "Don't hire her," taken from another posting allegedly published by the defendants.  Even if the court were to construe this as a request to amend the FAC, plaintiff has not provided good cause to amend in this manner and at this procedural posture.

1    In the April 9, 2010 findings and recommendations on the defendants' motion to

2 dismiss, this court found that "[d]efendants' assertion that plaintiff moved multiple times and

3 was operating under a new name may lead a reader to believe that plaintiff was . . . attempting to

4 avoid a lawsuit." (Doc. No. 27 at 9: 11-16.)  That is, in reviewing the challenged statements

5 within the context of the entire publication, the court concluded that the statements are

6 reasonably susceptible to a defamatory meaning on their face (libel per se) and, as such, plaintiff

7 is not required to prove special damages.  See id.; Civ. Code, § 45a; 5 Witkin, Summary of Cal.

8 Law (10th ed. 2005) Torts, § 541, p. 794-95.

9    The evidence proffered proves that the defendants published the challenged

10 statements online.  Defendants, however, assert the defense of truth as to the statement that Ms.

11 Agard moved multiple times.  In all cases of alleged defamation, whether libel or slander, the

12 truth of the offensive statements or communication is a complete defense against civil liability,

13 regardless of bad faith or malicious purpose.  Smith v. Maldonado, 72 Cal. App. 4th 637, 646

14 (Cal. Ct. App. 1999).  The defendants' defense of truth was addressed in the court's August 3,

15 2010 findings and recommendations on the defendants' June 2, 2010 motion for summary

16 judgment, wherein the court held:

17    While it is true that plaintiff moved her home and business addresses more
than once, the critical question is during what time period is plaintiff alleged to
18    have done so.  Defendants seemingly rely on a period of time both before, during
and after their business relationship with plaintiff to argue that plaintiff moved
19    multiple times.  Plaintiff, on the other hand, relies on a period of time surrounding
the state court action to argue that she did not move her business address at all
20    and only moved her home address once.  Thus, based on the evidence before the
court, there appears to be a genuine issue of material fact as to when plaintiff is
21    alleged to have moved "multiple times."  See Celotex Corp. v. Catrett, 477 U.S.
317, 323 (1986).
22

23 (See Doc. No. 49 at 9.)

24    Since the August 3, 2010 findings and recommendations were filed, this matter

25 was transferred to the undersigned based on the consent of the parties and is proceeding as a

26 bench trial.  As the trier-of-fact, then, the court finds that the defendants' statements are

1  appropriately read to allege that plaintiff moved multiple times during the pendency of the

2  underlying state court action.  Construing it as such, the court further finds that plaintiff did not

3  move multiple times during that time period.  Accordingly, the defendants' defense of truth fails.

4

5  Because the court also finds that the statements are defamatory, were not

6  privileged, and have a natural tendency to injure, the defendants are liable for publishing

7  defamatory statements about plaintiff.

8  2.    Damages

9  General damages are defined as "damages for loss of reputation, shame,

10  mortification and hurt feelings."  Cal. Civ. Code § 48a(4)(a).  Special damages are defined as

11  "all damages which plaintiff alleges and proves that he has suffered in respect to his property,

12  business, trade, profession or occupation, including such amounts of money as the plaintiff

13  alleges and proves he has expended as a result of the alleged libel, and no other."  Cal. Civ. Code

14  § 48a(4)(b).

15  In determining the appropriate remedy in this case, the undersigned has reviewed

16  all evidence submitted by plaintiff.  As discussed supra, this is an action proceeding as libel per

17  se.  Thus, plaintiff is not required to prove special damages.  Plaintiff, however, has submitted

18  evidence of loss of business.  The court finds plaintiff's evidence to be comprised of the

19  following:

20  (1)  The declaration of Shadiah Humphries,[3] who worked as a floral/decor designer in

21  California before she moved to Nevada.  (Doc. No. 58, Humphries Decl.)  Ms. Humphries met

22  plaintiff in 2006 and claims she was familiar with the defendants' 2008 wedding "due to the fact

23  that I was involved with [plaintiff] during her planning of weddings."  (Id.)  Ms. Humphries

24  declares that plaintiff's business was "thriving" during that time.  (Id.)  She further declares that

25  ───────────────────

26  [3]  Defendants object to this declaration on the ground that the witness was not identified
in plaintiff's Rule 26 disclosures.

8

the majority of her business was "through the internet so after reading the negative postings

online about [plaintiff] I do know that once your name is tainted publicly online where

prospective clients usually look for Wedding services then gaining business can become

extremely difficult."  (Id.)

(2) The declaration of Veronika Leoni, owner of A Spotlight Wedding.  (Doc. No. 59,

Leoni Decl.)  Ms. Leoni declares that she shared an office with plaintiff and that she saw

plaintiff's bridal inquiries drop from twenty per month to zero.  (Id. at 3.)  Due to the decline in

business, Ms. Leoni declares that plaintiff signed her lease over to Ms. Leoni in February 2009.

(Id.)

(3) The declaration of plaintiff.  (Doc. No. 60, Agard Decl.)  Plaintiff claims that after the

defendants' wedding, she "stopped receiving lead alerts from respond.com.[4]  No one was calling

for my services anymore.  I had to close my office and seek other means of income."  (Id. at 7.)

(4)  Copies of plaintiff's business contracts for $6,500.00 with the Hills and plaintiff's

other clients for sums of $3,500.00, $4,300.00, $5,000.00, $6,000.00 and $6,300.00.  (Agard

Decl., Ex. FF.)

(5)  A computer printout from www.TheKnot.com (a national wedding planning website)

that provides cost ranges for wedding planning services ($1,500 to greater than $5,000).  (Agard

Decl., Ex. II.)  These costs are not specific to the Sacramento area.

(6) The cost of wedding planning services from an unrelated wedding planning company

("A Day to Remember") in Sacramento.  (Agard Decl., Ex. II.)  Although not entirely legible, it

appears the fees listed are $3,000.00.

In their opposition, defendants argue, and the court agrees, that the exhibits and

declarations in support of plaintiff's motion for summary judgment reveal that the defendants'

November 2009 statements could not have been the cause of the decline in plaintiff's business.

---

[4] Respond.com is the website through which the defendants initially contacted plaintiff.

Plaintiff's uncontroverted evidence establishes that the defendants' wedding was in May 2008; following the defendants' wedding, "[n]o one was calling for [plaintiff's] services anymore" and she "had to close [her] office and seek other means of income" (Agard Decl. at 7); as a result of the decline in plaintiff's business, plaintiff was forced to sign her lease over to Ms. Leoni in February 2009 (Leoni Decl. at 3); and the defendants posted their challenged statements in November 2009 (FAC at 2).  Based on this evidence, the court finds that the defendants' defamatory statements, which were published on November 23, 2009, were not the cause of plaintiff's decline in business, which is alleged to have occurred in February 2009.

Plaintiff counters that although her first amended complaint argues that the postings were published on November 2009, she has evidence that at least one publication was made "2 years" before July 28, 2010.  (Pl.'s Resp. at 5.)  The posting referred to by plaintiff, however, does not contain any of the statements challenged in the FAC as defamatory.  Rather, that posting states: "Just a little friendly advice about Nina's Lovely I Dos.  Don't hire her.  You will regrett [*sic*] it.  Unless of course you want to pay her...then actually do everything yourself while she either shows up hours late or not at all."  As noted earlier, the statement "Don't hire her" is not before the court.  Thus, the evidence reveals that there is nothing to suggest that the defendants made the statements challenged in the FAC ("Ms. Agard moved multiple times" and "We discovered that she is operating under a new name and location in Napa Ca.") until November 2009.

Based thereon, the court finds that the defendants' statements could not have been the cause of the decline in plaintiff's business because they were published after the decline.  The court also notes that plaintiff's evidence of special damages fails.  Plaintiff, for example, failed to identify the number of new clients she contracted with prior to the allegedly defamatory postings, failed to establish her monthly income prior to the postings, and failed to show the trajectory of decline in her monthly income other than to say that she is presently out of business.

Because plaintiff did not submit any evidence that she suffered pecuniary damage

10

as a result of the defendants' November 2009 statements, the court finds that plaintiff is entitled to nominal damages in the amount of $1.00 and is not entitled to any special damages. Furthermore, the court does not find that punitive damages are warranted in this case.

V.    Miscellaneous

    A.    Plaintiff's Motion in Limine

        Plaintiff filed a motion in limine seeking exclusion of evidence referencing the underlying state court action, including letters written in support of defendants' motion for summary judgment.  Defendants have not filed an opposition.  Because of defendants' failure to oppose and because reference to the underlying state court action is not relevant to the sole remaining libel claim, this motion will be granted.

    B.    Plaintiff's Request for Judicial Notice

        Plaintiff also filed a request for judicial notice.  She seeks judicial notice of her resume and of a copy of a "Good Faith Settlement Agreement" given to defense counsel of April 23, 2010 during the Rule 26 meeting.  Neither of these documents is appropriate for judicial notice.  This request will be denied.

        Accordingly, IT IS HEREBY ORDERED that:

    1.  Plaintiff's August 23, 2010 motion for summary judgment is granted;

    2.  Plaintiff's August 23, 2010 motion in limine is granted;

    3.  Plaintiff's September 13, 2010 request for judicial notice is denied;

    4.  Plaintiff is awarded nominal damages in the amount of $1.00; and

    5.  Judgment be entered in favor of plaintiff.

DATED: October 26, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

/014;agar0323.msj2